O

# United States District Court
# Central District of California

| | |
|---|---|
| UPS SUPPLY CHAIN SOLUTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DIRECTED ELECTRONICS, INC., et al., <br><br> Defendants. | Case № 2:20-cv-10305-ODW (RAOx) <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [43]** |

## I.  INTRODUCTION

Plaintiff UPS Supply Chain Solutions, Inc. ("UPS") brings suit demanding indemnity from Defendants Directed Electronics, Inc.; DEI Headquarters, Inc.; DEI Sales, Inc.; and DEI Holdings, Inc. (collectively, "Directed Electronics") for liability and expenses UPS incurred defending against claims brought in South Korean court (the "Korean Litigation") arising from UPS's delivery of a shipment of goods to Directed Electronics, the buyer. (Compl., ECF No. 1.) After the Court granted in part and denied in part Directed Electronics' earlier motion to dismiss, UPS filed the operative Second Amended Complaint. (Order Granting In Part First Mot. Dismiss ("Order"), ECF No. 37; Second Am. Compl. ("SAC"), ECF No. 38.)  Directed

Electronics now moves to dismiss UPS's second, third, and fourth claims. (Mot. Dismiss ("Motion" or "Mot."), ECF No. 43.) After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons that follow, the Court **GRANTS** the Motion.

## II. JUDICIAL NOTICE

This Court previously took judicial notice of four translated copies of Korean judicial decisions related to the Korean Litigation. (Order 2–3.) Directed Electronics again requests judicial notice of two of these decisions. (Req. Judicial Notice, ECF No. 44.) The Court maintains judicial notice of these documents, which properly provide the Court with information about the subject matter, allegations, and issues raised in the Korean Litigation. Herein, the Court recognizes the facts set forth in the Korean Litigation documents *only* to the extent those facts provide information about the nature of the underlying litigation for the purpose of determining if UPS may be indemnified for the liability and expenses it incurred in connection therewith. The Court need not and does not take any of the facts in the Korean Litigation documents as true in order to perform this analysis.

## III. BACKGROUND

For purposes of this Rule 12(b)(6) motion, the Court accepts UPS's well-pleaded allegations as true. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

UPS is a corporation that provides national and international freight forwarding services to its customers. (SAC ¶ 1.) Directed Electronics is engaged in the business of consumer electronics, and its principal place of business is in California. (*Id.* ¶¶ 2–5.) This case involves an international transaction for sale of goods in which Directed Electronics was a U.S.-based buyer, non-party A1 Tech Incorporated ("A1 Tech") a Korea-based seller, and UPS the shipper of the goods. Also involved is U.S.-based Wachovia Bank, which issued a letter of credit guaranteeing Directed Electronics'

payment, and Korea-based Hana Bank, which eventually bought A1 Tech's right to payment from Directed Electronics.

The story begins in November 2007, when Directed Electronics placed a $346,669 order of car alarm parts (the "Cargo") from A1 Tech. (SAC ¶¶ 10, 20.) On November 21, 2007, at the request of Directed Electronics and A1 Tech, UPS booked the Cargo for air carriage from Seoul, South Korea to Los Angeles, California. (*Id.* ¶ 11.) In accordance with this booking, UPS prepared an Air Waybill designating A1 Tech as the "Shipper" and Directed Electronics as the "Consignee." (*Id.* ¶¶ 11–12.)

As explained in the final judgment in the Korean Litigation, UPS issued the Air Waybill for the Cargo. (Compendium of Exs. ("Compendium") Ex. B ("Seoul High Court Decision") 28, ECF No. 45; *see* Decl. Matthew G. Ardoin ("Ardoin Decl.") ¶ 4, ECF No. 44.) Before UPS delivered the Cargo, and at Directed Electronics' request, Wachovia Bank issued a Letter of Credit conditionally guaranteeing Directed Electronics' payment to A1 Tech for the Cargo in the amount of $239,000.[1] (Seoul High Court Decision 21.) Then, A1 Tech requested that UPS change the Air Waybill's Consignee from Directed Electronics to Wachovia Bank. (*Id.* at 28.) UPS agreed and issued a Second Air Waybill containing the requested change.[2] (*Id.*)

A1 Tech provided Hana Bank with a copy of the Second Air Waybill showing Wachovia Bank as the Consignee and recipient, and Hana Bank paid A1 Tech $172,967.95 for an export draft[3] granting Hana Bank the rights to the payment for the

---

[1] Monetary amounts are set forth in U.S. Dollars in the translated versions of the Korean judicial decisions, and no party contests these figures for the purposes of this Motion.

[2] The SAC differs significantly from the First Amended Complaint in that the SAC omits all references to two inconsistent air waybills and instead refers only to a single air waybill. The effect of this is to de-emphasize the error for which UPS was ultimately held liable in the Korean Litigation. However, UPS's decision to omit this information from the SAC does not change the analysis, because the the basis for the Korean court's decision is clear from the judicially noticeable Korean Litigation materials Directed Electronics submits.

[3] When a seller and buyer complete a trade transaction across international lines, an export draft is often used to carry out the financial aspect of the transaction. An export draft is similar to a check; it is an order "drawn by a domestic seller on a foreign buyer, directing the buyer to pay the trade amount to the seller or the seller's bank." *Export Draft*, Black's Law Dictionary (11th ed. 2019).

1   Cargo. (*Id.*) At that time, Hana Bank and A1 Tech agreed that if Hana Bank was unable
2   to obtain payment pursuant to the export draft, A1 Tech would be obligated to repay the
3   purchase price of the export draft and transfer the Cargo to Hana Bank as collateral for
4   payment of any debt borne by Hana Bank in relation to the transaction. (*Id.*) A1 Tech,
5   however, has since become insolvent. (SAC ¶¶ 21, 26.)

6         UPS ultimately delivered the Cargo to Directed Electronics as specified in the
7   original Air Waybill, and not to Wachovia Bank as specified in the Second Air Waybill.
8   (*Id.* ¶¶ 15, 18.) Directed Electronics accepted the Cargo but refused to pay, asserting
9   that because of a prior overpayment to A1 Tech for an earlier shipment of merchandise,
10  Directed Electronics had an accounting credit with A1 Tech which exceeded and
11  satisfied the payment obligation for the Cargo. (*Id.* ¶¶ 19, 23.) Hana Bank sought to
12  obtain payment for the Cargo from Wachovia, but Wachovia declined to provide the
13  requested payment because the export draft was inconsistent with the terms of the Letter
14  of Credit. (Seoul High Court Decision 28.)

15        Hana Bank proceeded to sue UPS in South Korean court. (SAC ¶¶ 20–21.) The
16  Seoul High Court held that because UPS negligently issued two inconsistent air
17  waybills, and because Hana Bank relied on the Second Air Waybill when it purchased
18  the export draft from A1 Tech, UPS was liable to Hana Bank for a portion of the export
19  draft purchase price. (Seoul High Court Decision 26–28.) The Korean Supreme Court
20  affirmed. (Compendium Ex. A ("Korean Supreme Court Decision") 6, ECF No. 45;
21  Ardoin Decl. ¶ 3.)

22        In its First Amended Complaint ("FAC"), UPS brought five claims against
23  Directed Electronics. Upon Directed Electronics' first motion to dismiss, the Court
24  dismissed the second through fifth claims, with leave to amend the third through fifth
25  claims only. (Order First Mot. at 14.) On February 10, 2022, UPS filed its SAC,
26  asserting claims for (1) breach of contract for failure to defend, (2) total equitable
27  indemnification, (3) partial equitable indemnification, and (4) contribution. These
28  claims correspond to claims one, three, four, and five in the SAC and are properly

asserted based on the Court's prior grant of leave to amend. Directed Electronics now moves to dismiss the SAC's second through fourth claims.

## IV.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)— a short and plain statement of the claim—to survive a dismissal motion. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend "is properly denied . . . if amendment would be

futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("Leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

## V.   DISCUSSION

UPS seeks equitable indemnification and contribution from Directed Electronics for the liability it incurred in the Korean Litigation. (SAC ¶¶ 47–55.) This liability arose from UPS having issued two inconsistent air waybills. *Supra* § II. The Court previously determined that, because UPS did not plausibly allege that Directed Electronics shared a joint obligation with UPS not to issue inconsistent air waybills, UPS's FAC lacked the factual allegations necessary to support either an equitable indemnity or a contribution claim. (Order 10–13.) The question now is whether the modified allegations in UPS's SAC cure this deficiency.

**A.   Equitable Indemnity and Contribution**

UPS's third and fourth claims are for total and partial equitable indemnification. Strictly speaking, these two claims are in fact two "end[s] of the spectrum of comparative equitable indemnification," and for the purposes of this Motion they can be analyzed together. *Great W. Drywall, Inc. v. Interstate Fire & Cas. Co.*, 161 Cal. App. 4th 1033, 1041 (2008).[4]

"Equitable indemnity . . . is premised on a joint legal obligation to another for damages . . . ." *C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700 (2019) (internal quotation marks omitted); *see Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1159 (2009) ("[T]here can be no indemnity without liability."). Claims for equitable indemnity are "subject to allocation of fault principles and comparative equitable apportionment of loss." *Mooradian*, 43 Cal. App. 5th at 700. Equitable indemnity "requires no contractual relationship," *Prince*, 45 Cal. 4th at 1158, and "is a

---

[4] The parties do not dispute that California law governs the substance of UPS's claims.

6

matter of fairness," *Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co.*, 234 Cal. App. 3d 1724, 1736 (1991).

UPS's second claim is for contribution. A claim for contribution arises when "a party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him." Cal. Civ. Code § 1432; *see also Morgan Creek Residential v. Kemp*, 153 Cal. App. 4th 675, 684 (2007) (describing a claim for contribution as accruing "[i]n situations where two or more parties are jointly liable on an obligation").

## B. UPS and Directed Electronics Not Jointly Liable to A1 Tech

In its SAC, UPS reasserts its equitable indemnity and contribution claims in counts two through four, adding two paragraphs alleging that, in the Korean Litigation, Directed Electronics submitted an evidence affidavit on UPS's behalf. (SAC ¶¶ 23–24.) The affidavit detailed a prior overpayment Directed Electronics made to A1 Tech, and the affidavit generally supports Directed Electronics' position that it had satisfied its obligation to pay for the Cargo. (*Id.*) UPS argues that the affidavit is "evidence of the belief of Directed Electronics at the time that its position would have a favorable impact for UPS in the Korean litigation" and demonstrates that "UPS and Directed Electronics shared an obligation to A1 Tech not to consummate the delivery of the Cargo unless the requisite payment obligation for the ordered goods had been properly satisfied." (Opp'n 8–9, ECF No. 46; SAC ¶ 17.)

These allegations do not plausibly support UPS's claim that Directed Electronics is jointly liable to pay for the judgment in the Korean Litigation. In the first place, the mere fact that someone presents evidence in court that tends to decrease a party's liability does not make that someone a co-obligor on that liability.

Moreover, the Seoul High Court decision does not engage with any of the factual issues that would be relevant to a finding of joint liability for having improperly consummated the delivery of the Cargo. At root, the Seoul High Court held UPS liable for having issued inconsistent air waybills. In so doing, the court did not consider

whether Directed Electronics' prior overpayment to A1 Tech satisfied Directed Electronics' payment obligations for the Cargo. The Seoul High Court also did not consider whether UPS and Directed Electronics failed to fulfill a joint obligation not to complete delivery of the cargo until Directed Electronics (or perhaps Wachovia Bank) had paid for it.[5] (*See generally* Seoul High Court Decision.)

Ultimately, and as discussed in the prior Order, even if UPS and Directed Electronics had shared an obligation not to complete delivery of the Cargo, this matters little to the "essential question," which is whether Directed Electronics shared an obligation with UPS not to issue inconsistent air waybills. (Order First Mot. 12–13.) UPS was ultimately held liable for issuing inconsistent air waybills, not for having completed delivery of the Cargo before Directed Electronics had paid for it, and it is therefore irrelevant whether UPS and Directed Electronics may have shared an obligation to ensure that A1 Tech or Hana Bank got paid for the Cargo.

UPS nevertheless argues that "the early conduct" of the Korean Litigation focused on Directed Electronics' failure to pay for the Cargo. (Opp'n 9.) But "[u]nlike the duty to defend, . . . the duty to indemnify does not arise until liability is proven." *Aluma Sys. Concrete Constr. of Cal. v. Nibbi Bros. Inc.*, 2 Cal. App. 5th 620, 627 (2016). Thus, UPS's indemnity claim is not saved by the fact that the Korean litigation may have previously focused on Directed Electronics' nonpayment. The final decision of the Korean courts did not rely on Directed Electronics' nonpayment, and UPS cannot demand Directed Electronics indemnify it for a liability that did not arise from a wrongful act of Directed Electronics.

---

[5] This conclusion is reinforced by the fact that the Seoul High Court reduced the award to Hana Bank by 30% because it found Hana Bank contributorily negligent for having relied on the inconsistent air waybill. (Seoul High Court Decision 30.) This reduction emphasizes that the liability in the Korean Litigation arose from inconsistent air waybills, not from Directed Electronics' nonpayment or improper acceptance of the Cargo.

The foregoing analysis applies in equal measure to UPS's contribution claim. Without a "joint, or joint and several obligation," UPS cannot demand that Directed Electronics contribute. Cal. Civ. Code § 1432; *Kemp*, 153 Cal. App. 4th at 684.

Directed Electronics' Motion to Dismiss UPS's claims for equitable indemnity and contribution is **GRANTED**. As UPS was unable to cure the deficiencies the Court identified in its prior order dismissing these claims, the Court determines that granting further leave to amend would be futile. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming denial of leave to amend where the amended complaint failed to cure the defects identified in an order dismissing a prior complaint). Accordingly, the Court dismisses the second through fourth claims **WITHOUT LEAVE TO AMEND**.

## VI. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss is **GRANTED**. (ECF No. 43.) Claims two, three, and four are **DISMISSED WITHOUT LEAVE TO AMEND**. Defendants shall answer within **twenty-one (21)** days.

**IT IS SO ORDERED.**

August 9, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**